# EXHIBIT A

# STATE COURT PLEADINGS

| STATE OF SOUTH CAROLINA | ) | **2019CV1010600519** |
|---|---|---|
| | ) | CIVIL CASE NUMBER |
| COUNTY OF CHARLESTON | ) | |
| | ) | **IN THE MAGISTRATE'S COURT** |
| | ) | |
| | ) | **SUMMONS** |

Jay Connor
215 East Bay Street 201 F
Charleston, SC 29401
(704) 763-2155
**PLAINTIFF(S)**

Vs

| United Life Services, Llc | Securus Direct Life, Llc | The Baltimore Life Insurance Company |
|---|---|---|
| 1817 Crane Ride Dr. Suite 500 | 1070 Route 34 Suite S | 10075 Red Run Blvd |
| Jackson, MS 39216 | Matawan, NJ 07747 | Owings Mills, MD 21117 |

**DEFENDANT(S)**

| Ashley I. King | Larry Dickstein | Harold B Rojas |
|---|---|---|
| 1817 Crane Ride Dr. Suite 500 | 1070 Route 34 Suite S | 10075 Red Run Blvd |
| Jackson, MS 39216 | Matawan, NJ 07747 | Owings Mills, MD 21117 |

**AGENT(S)**

**TO THE DEFENDANT(S) NAMED ABOVE:**

**YOU ARE SUMMONED** and required to answer the allegations of the attached complaint and present any appropriate counterclaims/crossclaims to the attached Complaint within THIRTY days from the first day after receipt of this summons. Your Answer must be received by the:

**Small Claims - City**
**995 Morrison Drive**
**P. O. Box 941**
**Charleston, SC 29403**
**Phone: (843) 724-6720**
**Fax: (843) 724-6785**

If you fail to answer within the prescribed time, a judgment by default may be rendered against you for the amount or other remedy requested in the attached complaint, plus interest and costs. **If you desire a jury trial, you must request one in writing at least five (5) working days prior to the date set for trial.** If no jury trial is timely requested, the matter will be heard and decided by the Judge.

# READ ATTACHED INSTRUCTIONS CAREFULLY

April 16, 2019

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

FILED IN CHARLESTON COUNTY
APR 16 2019
CITY SMALL CLAIMS COURT

Jay Connor,

    Plaintiff,

Vs.

United Life Services, LLC, Securus Direct Life, LLC and The Baltimore Life Insurance Company

    Defendants.

Civil Action No. 2019LV1010400519

**VERIFIED COMPLAINT**

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT THE BALTIMORE LIFE INSURANCE COMPANY:**

HAROLD B. ROJAS
10075 RED RUN BLVD.
OWINGS MILLS, MD 21117

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT UNITED LIFE SERVICES, LLC:**

ASHLEY I. KING
1817 CRANE RIDE DR., SUITE 500
JACKSON, MS 39216

**ADDRESS FOR REGISTERED AGENT OF DEFENDANT SECURUS DIRECT, LLC:**

LARRY DICKSTEIN
1070 ROUTE 34 SUITE S
MATAWAN, NJ 07747

Plaintiff complaining of the Defendants alleges as follows:

## TYPE OF ACTION

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section 37-21.

## PARTIES

2. Plaintiff is a resident of Charleston County, South Carolina.

1

3. The call alleged in this complaint was made to Plaintiff's wireless phone line in South Carolina.

4. The Baltimore Life Insurance Company (hereinafter "Baltimore Life") is a Maryland corporation with its principal place of business in Owings Mills, MD.

5. Baltimore Life conducts and transacts business in South Carolina.

6. Baltimore Life either directly or by those on its behalf, makes calls to residents of South Carolina.

7. Securus Direct LLC (hereinafter "Securus") is a New Jersey limited liability company with its principal place of business in New Jersey.

8. Securus conducts and transacts business in South Carolina.

9. Securus either directly or by those on its behalf, makes calls to residents of South Carolina.

10. United Life Services, LLC (hereinafter "United Life Services") is a Mississippi limited liability company with its principal place of business in Jackson, MS.

11. United Life Services conducts and transacts business in South Carolina.

12. United Life Services either directly or by those on its behalf, makes calls to residents of South Carolina.

## VENUE AND JURISDICTION

13. This cause of action arises out of conduct of Defendants initiating a telephone call to Plaintiff's wireless telephone number in Charleston County South Carolina.

14. Plaintiff is a resident of Charleston County.

15. Venue and jurisdiction are proper in this Court pursuant to 47 USC § 227, SC Code Ann § 36-2-803 and the laws of the United States and Constitution as they may apply.

### The Telephone Consumer Protection Act

16. Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an automated telephone dialing system ("ATDS") or with a prerecorded or artificial voice are referred to as "robocalls" by the FCC. Encouraging individuals to hold robocallers accountable, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

17. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

18. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

19. The Federal Communications Commission ("FCC") has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted) (internal quotation marks omitted).

20. Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*. 47. U.S.C. § 217.

21. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10

3

(E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The South Carolina Telephone Privacy Protection Act

22. In pertinent part and as amended, at Section 37-21-40 (A), The South Carolina Telephone Privacy Protection Act ("SCTPPA") requires of all telephone solicitations into the State, "[A]t the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made…"

23. The SCTPPA also prohibits the failure to maintain accurate Caller ID Information. *See* 37-21-50.

24. Moreover, the SCTPPA states "a person may not initiate, or cause to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made." *See* 37-21-70.

25. At Section 37-21-80 (A), the "SCTPPA" provides, "A person who is aggrieved by a violation of this chapter is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation."

26. At Section 37-21-80 (B), the "SCTPPA" provides, "If the court finds a willful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation."

27. At Section 37-21-80 (B), the "SCTPPA" provides, "Notwithstanding another provision of law, in addition to any damages awarded, the person initiating the action for a violation of this chapter may be awarded reasonable attorneys' fees and court costs."

### The Worsening Problem of Robocalls

28 "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

29 "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

4

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf

30. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

31. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

32. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

## TELEPHONE CALL MADE TO PLAINTIFF

33. Prior to the call alleged herein, Baltimore Life and Securus received multiple complaints about unwanted, unsolicited calls made by or on behalf of United Life Services to sell Baltimore Life policies.

34. Despite that fact, Securus continued to act as a managing agent/marketing company for United Life and facilitate the sale of policies for Baltimore Life.

35. Despite that fact, Baltimore continued to accept policies sold by Securus and United Life Services.

36. On March 8, 2019, Mr. Connor received a call on behalf of United Life Services.

37. When the phone call was answered, there was no one on the other line.

38. The call recipient said "hello" several times.

39. Instead, the call started with a loud click and then a pause.

5

40. The loud click and then pause is indicative of a predictive dialer being used, as the sound heard by the call recipient is the algorithm of the predictive dialer's computer attempting to send the call to a telemarketing representative.

41. The call was clearly made with an automated calling system, or an "ATDS" as defined by the TCPA.

42. A predictive dialer is an ATDS for purposes of the TCPA.

43. He answered the call and provided a unique name to ensure that he could identify the calling party.

44. Shortly thereafter, Mr. Connor was solicited for Baltimore Life goods or services

45. The call also violated the SCTPPA by: (a) their failure to provide in a clear and conspicuous manner, a first and last name to identify themselves and provide the name of the person on whose behalf the telephone solicitation is being made, as until the Plaintiff provided his unique name, the caller only identified themselves as "Senior Benefits" (b) the failure to maintain accurate Caller ID Information, as the Caller ID number that called the Plaintiff, (704) 876-7238 is a non-working number and (c) the fact that the Plaintiff was called after he previously stated a desire not to be contacted again.

## BALTIMORE LIFE'S VICARIOUS LIABILITY

46. Baltimore Life is a "person," as defined by 47 U.S.C. § 153(39).

47. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. 227(b)(2).

48. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

49. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

50. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Baltimore Life may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing
> its telemarketing activities to unsupervised third parties would
> leave consumers in many cases without an effective remedy for

6

> telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

51. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

52. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

53. To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

54. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

55. Baltimore Life is legally responsible for ensuring that the company who made the telemarketing calls for them complied with the TCPA, even if Baltimore Life did not themselves place the calls.

56. United Life Services, as part of its agreement and at the direction of Baltimore Life, telemarketed to Plaintiff.

57. Baltimore Life knowingly and actively accepted business that originated through illegal telemarketing.

58. By hiring a company to make calls on its behalf, Baltimore Life "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

7

59. Moreover, Baltimore Life maintained interim control over the actions of the party that made the call.

60. For example, Baltimore Life had absolute control over whether, and under what circumstances, they would accept a customer.

61. Furthermore, Baltimore Life had day-to-day control over the actions of the party that made the calls, including the ability to prohibit it from using an ATDS contact potential customers of Baltimore Life.

62. Baltimore Life also gave interim instructions to the company that made the calls by providing the parameters of customers, volume of calling and contracts it would purchase.

63. Remarkably, other consumers have identified to Baltimore Life the fact that United Life Services was making illegal telemarketing calls to him, yet they continued.

64. Finally, the FCC held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Dish*, 28 FCC Rcd. at 6592-93 ¶ 46. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CAUSES OF ACTION

### Count One:
### Violations of the TCPA's Automated Calling provisions

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone number of Plaintiff (1) using an ATDS and (2) an artificial or prerecorded voice.

67. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is presumptively entitled to an award of $500 in damages for each and every violation to his cellular telephone numbers using an ATDS, pursuant to 47 U.S.C. § 227(b)(3)(B). If these violations are found to be knowing and/or willful, that amount can be trebled.

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Count Two:
## Violations of the SCTPPA

69. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) their failure to provide in a clear and conspicuous manner, a first and last name to identify themselves and provide the name of the person on whose behalf the telephone solicitation is being made, as until the Plaintiff provided his unique name, the caller only identified themselves as "Senior Benefits" (b) the failure to maintain accurate Caller ID Information, as the Caller ID number that called the Plaintiff, (704) 876-7238 is a non-working number and (c) the fact that the Plaintiff was called after he previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made, which Mr. Connor did when he complained about the prior calls.

71. The Defendants' violations were negligent and/or knowing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys fees pursuant to the SCTPPA;

- For an Order enjoining the Defendants from using pre-recorded message calls, other than for emergency purposes;

- For unspecified punitive damages in an amount to be determined by this Court.

- For such other and further relief as the Court may deem just and proper.

9

## VERIFICATION

The Undersigned states and swears that all the forgoing allegations are true and correct to the best of his knowledge and belief.

Jay Connor

Subscribed and sworn to before me by Jay Connor on this the ___ day of April 2019.

Notary Public for South Carolina
My commission expires on 01/10/2028

10

## IN THE CHARLESTON COUNTY MAGISTRATE'S COURT

### INSTRUCTIONS FOR DEFENDANT

**If you do not wish to oppose the plaintiff's claim you may:**
Contact the plaintiff and make an out-of-court settlement with the plaintiff before the trial date and file with the magistrate court a dismissal of the case signed by the plaintiff, or
Make no answer to the complaint. In that case, the plaintiff will be given a default judgment against you in the amount specified in the complaint.

**If you wish to oppose the claim:**
   a. You must file an answer with the magistrate's court within 30 days after the date of service. If you fail to answer within that time period, you lose your right to defend the case and the plaintiff may be given a default judgment against you in the amount specified in the complaint. Your answer may be made in writing in a form approved by the magistrate within the time limit specified in the summons.
   b. If you answer within the specified time, you will be notified of the time and date of trial. You must maintain a correct mailing address with the Court and you must appear for trial. Should you fail to appear, you lose your right to defend the case and the plaintiff may be given a default judgment against you in the amount specified in the complaint.
   c. At the time of trial you must bring with you all books, papers, witnesses, and evidence you have to establish your defense. You are required to comply with the South Carolina Rules of Evidence.
   d. At your request the court will issue a subpoena for any witness you may need (You must request the subpoena as soon as possible and before the trial date). **IF THE SUBPOENA MUST BE SERVED BY A DEPUTY, THERE IS AN ADDITIONAL $8.00 FEE THAT MUST BE PAID TO THE COURT FOR SERVICE OF THE SUBPOENA.**

If you desire a jury trial, you must request one in writing at least **FIVE (5)** working days prior to the date set for trial. If no jury trial is timely requested, the matter will be heard and decided by the magistrate.

If you have a claim against the plaintiff that grows out of the same transaction or occurrence as the plaintiff's claim, you may file a Counterclaim. The Counterclaim must be filed with the magistrate within the time limits specified in the summons for answering. The Counterclaim must be made in writing in a form approved by the magistrate. Your Counterclaim will be tried at the same time as the Plaintiff's claim if it does not exceed the jurisdiction of the magistrate to hear. If the Counterclaim exceeds the magistrate's jurisdiction, the entire matter will be transferred to the Circuit Court.

If you have a claim against the plaintiff that does not grow out of the same occurrence or transaction as the plaintiff's claim, you may file a claim (complaint) against the plaintiff. This claim would be heard separate and apart from the plaintiff's claim against you.

If you are a member of the Armed Service of the United States, please advise the court upon the receipt of this summons.

If you are under 18 years of age, please advise the court upon receipt of this summons.

If you are a prisoner in any municipal, county, state, or federal prison, please advise the court upon receipt of this summons.

You may be represented by an attorney, but are not required to have one. The magistrate's court will explain the procedure of the court and will help you prepare papers related to your action if you require such assistance. The Court cannot, however, represent you, provide you with an attorney or give you any legal advice.

**If you are a business and are going to be represented by a Non-Lawyer, a Non-Lawyer Authorization Form must be included with your Answer/Counterclaim. (See 33-1-103 SC Code of Laws)**

MV 25

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) <br> COUNTY OF CHARLESTON ) <br> ) <br> ) | **2019CV1010600519** <br> CIVIL CASE NUMBER <br> IN THE MAGISTRATE'S COURT <br> ANSWER |

Jay Connor
215 East Bay Street 201 F
Charleston, SC 29401
(704) 763-2155
**PLAINTIFF(S)**
Vs

| United Life Services, Llc | Securus Direct Life, Llc | The Baltimore Life Insurance Company |
|---|---|---|
| 1817 Crane Ride Dr. Suite 500 | 1070 Route 34 Suite S | 10075 Red Run Blvd |
| Jackson, MS 39216 | Matawan, NJ 07747 | Owings Mills, MD 21117 |

**DEFENDANT(S)**

AGENT(S)

| Ashley I. King | Larry Dickstein | Harold B Rojas |
|---|---|---|
| 1817 Crane Ride Dr., Suite 500 | 1070 Route 34 Suite S | 10075 Red Run Blvd |
| Jackson, MS 39216 | Matawan, NJ 07747 | Owings Mills, MD 21117 |

On _____ I was served with a Complaint requiring me to answer within thirty days from the date of service. My Answer, which is hereby filed with the **Small Claims - City,** is as follows:

CHECK ONE:

    A. ☐ I contest the jurisdiction of the court based on the following: (use additional pages if necessary)
_____
_____

    B. ☐ I admit everything in the complaint and do not want a trial.

    C. ☐ I admit that I am responsible, but not for the total amount claimed by the Plaintiff(s) because: (use additional pages if necessary) _____
_____
_____

    D. ☐ I deny that I am responsible at all because: (use additional pages if necessary)
_____
_____

**YOU MUST FILE THIS DOCUMENT WITH THE COURT WITHIN THIRTY DAYS**

THE DEFENDANT/PLAINTIFF STATES THAT THE INFORMATION CONTAINED IN THIS ANSWER IS TRUE AND CORRECT TO THE BEST OF HIS/HER KNOWLEDGE.

DATED: _____

_____
SIGNATURE OF DEFENDANT(S) (OR ATTORNEY)
**IF MORE THAN ONE DEFENDANT, ALL MUST FILE ANSWER**

**PLEASE RETURN TO:**
**Small Claims - City**
**995 Morrison Drive**
**P. O. Box 941**
**Charleston, SC 29403**
**Phone: (843) 724-6720**
**Fax: (843) 724-6785**

MV2